FILED

2015 Dec-07  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| DONNA KAY LOVELESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:14-CV-01773-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Donna K. Loveless, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a Period of Disability, Disability Insurance Benefits ("DIB"), and Social Security Income ("SSI"). Ms. Loveless timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Loveless was fifty-one (51) years old at the time of the Administrative Law Judge's ("ALJ's") decision. She has at least a high school education, having earned a GED, and has past relevant work experience as a furniture assembler. (Tr.

at 173-74.) Ms. Loveless claims that she became disabled on November 7, 2011, due to bilateral carpal tunnel, tennis elbow, and anxiety disorder. (Tr. at 173.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Loveless meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 11-12.) He further determined that Ms. Loveless has not engaged in SGA since the alleged onset of her disability. (Tr. at 11.) According to the ALJ, Plaintiff's bilateral carpal tunnel syndrome status post release, right tennis elbow, disc protrusions at C4-5 and C5-6 with foraminal stenosis, minimal L5-S1protrusion, and L5-S1 facet arthropathy are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 12.) The ALJ did not find Ms. Loveless's allegations to be totally credible, and he determined that she has the RFC to perform a range of medium work as defined in 20 CFR §§

404.1567(c) and 416.967(c), finding that she can frequently perform bilateral fingering and handling but not constantly. (*Id.*) The ALJ further found that she must avoid concentrated exposure to cold temperatures, working at unprotected heights, and close proximity to moving dangerous machinery. (*Id.*)

According to the ALJ, Ms. Loveless is unable to perform any of her past relevant work, she is an "individual closely approaching advanced age," she has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.* at 17.) Because Plaintiff cannot perform the full range of medium work, the ALJ relied upon the testimony of a vocational expert to determine that there are still a number of jobs in the national economy that she is capable of performing, such as bander of wooden boxes, automatic stacker, and laundry worker II. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from November 7, 2011, through the date of this decision." (*Id.* at 18.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Loveless alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ erred in giving little weight to the Medical Source Opinion (Physical) completed by her claimed treating physician, Dr. Long. (Doc. 11 at 17.) Second, Plaintiff contends that the ALJ did not properly evaluate her credibility, and failed to give proper consideration to her subjective complaints of pain when he made his RFC determination. (Doc. 11 at 28.)

### A.   Treating Physician's Medical Source Opinion

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 11 at 17.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a

claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions

of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Even though Plaintiff quit working in November 2011, she did not seek any medical treatment until March 14, 2012, when she first saw Dr. Long. (Tr. at 250-51.) He noted that she complained of right elbow pain, which made it difficult for her to lift anything. Dr. Long referred Plaintiff to Dr. Dyas, an orthopedic surgeon, and she received medication prescriptions from both doctors. (Tr. at 250, 305.) In the follow-up visit with Dr. Long on April 20, Ms. Loveless reported she was "not any better." (Tr. at 249.) Dr. Long ordered an MRI of her right elbow. (Tr. at 250.) Plaintiff did not return until September 9, during which visit she reported low back pain. (Tr. at 254.) At that visit her medications included Lorcet Plus7 7.5-650 mg, BID, and Xanax8 0.5 mg, one tablet twice a day. (*Id.*) Under "General Appearance," Dr. Long noted "ill appearing" and "uncomfortable due to pain," but he also noted "in no acute distress, well developed, well nourished, normal, alert, well hydrated, in no distress, pleasant." (Tr. at 286.) His diagnosis at that time was "DJD L\S area" and "DJD C-spine." (Tr. at 288.) Pursuant to Dr. Long's orders, Ms. Loveless underwent MRIs of the cervical and lumbar spines on

September 20. (Tr. at 294.) Dr. Long saw Ms. Loveless for follow-up to the tests on September 25. Under "Review of Systems" the note included, "Admits sleep disturbance, admits, every night, has trouble maintaining sleep." (Tr. at 293.) She was seen again on October 2. Her complaint was noted as "Back pain." (Tr. at 294.) Dr. Long's diagnoses were "Back Pain, DJD L5-S1, and C-Spine Stenosis" and he included, once again, "ill-appearing, uncomfortable due to pain" but also "in no acute distress, well developed, well nourished, normal, alert, well hydrated, in no distress, pleasant." (Tr. at 297.) Five months later, on March 20, 2013, Dr. Long completed a sworn Functional Capacity Assessment at the request of Plaintiff's attorney, in which he found that Plaintiff could stand for two hours total during an eight hour workday; that she could walk for one hour total during an eight hour workday; that she could sit for four hours during an eight hour workday; that she would need to lie down for at least one hour during an eight hour workday; and finally, that Plaintiff would miss sixty full or partial days of work during a year due to her ailments. (Tr. at 327-29.) Dr. Long reported that he based this assessment on his clinical evaluation of Plaintiff. (Tr. at 328.)

The ALJ gave limited weight to Dr. Long's Functional Capacity Assessment, and provided specific reasons for so doing. First, the ALJ determined that Dr. Long treated Plaintiff too infrequently and was not actually treating

Plaintiff when he rendered his Functional Capacity Assessment. Second, the Commissioner found evidence in Plaintiff's medical history contradictory to the limitations Dr. Long noted in his opinion.

The record indicates that there is substantial evidence from which the ALJ could have found "good cause" to discount Dr. Long's opinion. As found by the ALJ, Dr. Long examined Plaintiff only seven times since March 2012, when he first began treating her. (Tr. at 328). Those seven visits were not frequent, as the record indicates a 6-month break between March 2012 and September 2012. (Tr. at 248-251, 269-272). The last visit to Dr. Long's office was made on October 2, 2012. (Tr. at 294-298). It was not until March 2013, five months later, that Dr. Long completed his Functional Capacity Assessment. (Tr. at 327-329). From this information, the ALJ concluded that Dr. Long did not have the type of ongoing relationship with the plaintiff, at the time his opinion was rendered, as is required by the regulations for him to be considered a treating physician. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (defining an "ongoing relationship" as "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)" and stating that "[w]e may consider an acceptable medical source who has treated or evaluated you only a few

times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("The question is whether [the physician] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*.") (emphasis added).

Plaintiff argues that during the 6-month interim in which she was not seeing Dr. Long, she was seeing the specialist to whom Dr. Long referred her, Dr. Dyas, and that Dr. Dyas saw her on nine occasions during the relevant period and performed three surgeries on her elbow and wrists. However, Plaintiff does not present any argument with respect to the ALJ's treatment of Dr. Dyas's opinions and findings. While this Court recognizes that some may argue that seven visits might be enough to trigger a "treating physician" relationship, the mere fact that the ALJ decided otherwise does not amount to grounds for reversal, given the other substantial evidence supporting the ALJ's decision, as follows.

The frequency and timing of Plaintiff's visits with Dr. Long were not the only reasons for the ALJ's decision to discount Dr. Long's opinion. The ALJ also found that Dr. Long's own treatment records did not support his opinion. The ALJ refers to multiple occasions in the record where Dr. Long indicates Plaintiff as

appearing "pleasant, well developed, well nourished, and in no acute distress." (Tr. at 289, 294, 297). In September and October 2012, Dr. Long further noted that the plaintiff exhibited "normal motor strength in her arms and legs, and no swelling or joint abnormalities." (Tr. at 286, 298). As the ALJ noted, these clinical findings do not support Dr. Long's limitations for standing and walking he offered in his assessment, made some five months later, especially after having not seen the plaintiff in those five months. (Tr. at 16, 286, 289, 294, 297-98). The regulations make clear that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The regulations also provide that an ALJ must accord a treating source's opinion controlling or substantial weight only if it is well supported by objective medical findings and is not inconsistent with the other substantial evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Additionally, other objective medical evidence in the record fails to support the drastic limitations Dr. Long found in his Functional Capacity Assessment. For example, Dr. Dyas, the orthopedic surgeon, treated Plaintiff for carpal tunnel syndrome, but his records reveal that her condition improved with surgeries. Dr. Dyas first examined Plaintiff in April 2012, and found no sensation of the medial

nerve bilaterally in her arms, positive Phalen's sign test and positive Tinel signs, which indicated bilateral carpal tunnel syndrome. (Tr. at 239). An x-ray of her right elbow revealed lateral epicondylar spur, consistent with chronic epicondylitis. (Tr. at 236). He administered a steroid injection and gave her a tennis elbow splint. (Tr. at 239). Dr. Dyas referred Plaintiff for electromyography ("EMG") and a nerve conduction study, which confirmed bilateral carpal tunnel syndrome. (Tr. at 231-32, 239). She underwent surgery for a right carpal tunnel decompression and received a corticosteroid injection to her elbow in June 2012. (Tr. at 244-47). Later in June 2012, Dr. Dyas noted that post-operatively Plaintiff was doing well. (Tr. at 242). She reported feeling "pleased with the results of the surgery." (Tr. at 266). She underwent surgery for a left carpal tunnel decompression in September 2012. (Tr. at 318-19). Her incisions healed without any problems. (Tr. at 243, 259, 268, 304). When Dr. Dyas examined Plaintiff in December 2012 for right elbow tenderness, her wrists showed full range of motion, intact sensation, full extension, and flexion at 5/5. (Tr. at 229). Plaintiff underwent a right elbow extensor tendon release in late December 2012. (Tr. at 316-17). At a visit in March 2013, following the procedure, Plaintiff reported doing okay. (Tr. at 306). Dr. Dyas noted that her incisions healed without erythema and her range of motion and handgrip strength had improved. (Tr. at 307).

Furthermore, an MRI was taken in September 2012 of Plaintiff's cervical spine showed no evidence of disc herniation or central canal stenosis. (Tr. at 292). The MRI of her lumbar spine taken on the same date showed minimal disc protrusion without gross evidence of neural impingement and facet arthropathy. (Tr. at 272).

The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See Battle v. Astrue*, 243 F. App'x 514, 523 (11th Cir. 2007) ("it is the ALJ's duty to weigh the evidence and testimony [and] to resolve the conflicts in the evidence and testimony"). Although Plaintiff disagrees with the ALJ's decision to give Dr. Long's opinion little weight, she cannot show that the ALJ did not articulate good cause for giving the opinion such weight, as his decision clearly reflects that he gave it little weight because Dr. Long did not have an ongoing treating relationship with Plaintiff at the time he rendered his opinion, and his opinion was not supported by his own treatment records. Further, other objective medical evidence of record did not support the limitations opined by Dr. Long. Because the ALJ followed the proper legal standards and substantial evidence supports his decision, Plaintiff's argument fails.

### B.     Ms. Loveless's Allegations of Pain

Plaintiff asserts that the ALJ's evaluation of her subjective complaints of pain was improper. Specifically, Ms. Loveless alleges that the ALJ failed to consider relevant evidence, and came to his conclusions regarding her credibility arbitrarily. Plaintiff further alleges that had the ALJ found her testimony credible, and assigned it the proper weight, she would have been found disabled.

The Social Security Act provides that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." *See* 42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (same). "[T]here must be medical signs and findings . . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce pain and other symptoms alleged and which, when considered with all evidence required to be furnished . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A); *see* 20 C.F.R. §§ 404.1529, 416.929. Accordingly, an ALJ is not required to merely accept a claimant's subjective allegations of pain or other symptoms and may properly consider the claimant's credibility when making a determination of disability. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the ALJ applies what the Eleventh Circuit calls the "pain standard." *See Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The pain standard reflects the language of 20 C.F.R. §§ 404.1529 and 416.929. *See Wilson*, 284 F.3d at 1225-26. Although the ALJ is not required to recite the pain standard, the ALJ must make findings that indicate that the standard was applied. *See id*. at 1226-27. If, as in the instant case, a claimant establishes an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of those symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26. In addition to the objective medical evidence, the ALJ considers factors such as (i) treatment history, (ii) the type, dosage, effectiveness, and side effects of any medications taken, (iii) treatment taken other than medications, (iv) any other measures used for relief of pain or other symptoms, (v) any precipitating and aggravating factors, (vi) medical source opinions, (vii) statements by the claimant and others about pain and other symptoms, (viii), information about prior work, and (ix) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). The ALJ also appropriately considers inconsistencies in the

evidence, and the extent to which there are conflicts between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating and non-treating sources or by other persons about how the symptoms affect the claimant. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The regulations do not require, however, that the ALJ specifically discuss every section 404.1529/416.929 factor in evaluating a claimant's credibility. *See Dyer*, 395 F.3d at 1211 (concluding ALJ "adequately explained his reasons" for discrediting claimant's pain testimony where "ALJ considered [claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications").

Thus, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210. "[P]articular phrases or formulations" do not have to be cited in

an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ recited the applicable standards for assessing subjective complaints and found that Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of her symptoms were not "entirely credible." (Tr. at 13.) The ALJ's decision was based upon Plaintiff's own statements, her daily activities, the conservative treatment, and inconsistencies in the record. (Tr. at 12-17).

In her testimony at the Administrative Hearing, Ms. Loveless described the degenerative disk disease in her neck as so severe that it prevents her from getting more than two or three hours of sleep at night. (Tr. at 31.) She said that the issues with her right elbow cause shooting pains when she lifts even a cup of coffee. (*Id.*) In spite of bilateral carpal tunnel surgery, she said she still has problems with her right hand. Her back "goes out on me from time to time."(*Id.*) Further, these problems prevent her from sitting and standing for more than 15-20 minutes at a time and walking more than very short distances. (Tr. at 32, 33.) According to Plaintiff, she lies down three or four hours each day to try to lessen her pain. (Tr. at 32.) Addressing her pain on a scale of one to ten, Ms. Loveless stated, "On a good

day, about seven, and, on a bad day, about ten." With her neck and shoulders, every day is a bad day. (Tr. at 33.) She said she needs help getting dressed and fixing her hair, that her daughters help with the housework, and that while she can load the dishwasher, she cannot sweep or mop and needs assistance buying groceries. When the ALJ inquired about her ability to lift, she explained that she has difficulty lifting a two-liter soft drink. (Tr. at 34.) The ALJ asked her if her "great big purse" that he noticed sitting next to her weighs 10-15 pounds. She replied, "No, sir. Probably five or six pounds," and explained that it does hurt her shoulders. (Tr. at 35.)

The ALJ's decision to discredit Plaintiff's testimony is supported by substantial evidence. First, the ALJ found that Plaintiff's own statements in her medical record discredited her complaints of disabling symptoms. The ALJ pointed out that Plaintiff told Dr. Dyas in December 2012 that she "wants to hold off on anymore treatment of her back and neck" because "her low back doesn't hurt her as much as her elbows, neck, and shoulders do." (Tr. at 300).

The ALJ found further evidence to discredit Plaintiff's testimony about her constant state of fatigue. As the ALJ noted, Plaintiff testified at her hearing that she "stays tired all the time" and that she needed to lie down for several hours a day. (Tr. at 30-32). However, the ALJ noted that her medical record was devoid almost

entirely of any complaints of fatigue, or any attempt to remedy a lack or loss of sleep. (Tr. at 227-239, 240-247, 257-268, 293, 299-314). Plaintiff denied any problems with fatigue in September 2012, during an office visit with Dr. Long. (Tr. at 293 ("Denies Fatigue.")). She again denied fatigue in March 2013. (Tr. at 306). The ALJ reviewed Dr. Dyas's records and found no evidence that she ever complained of chronic fatigue or sleeping problems. (Tr. at 227-39, 240-47, 257-68, 299-314).

Plaintiff's final statement which the ALJ found not credible concerned what the plaintiff said her problems actually prohibited her from doing. At her hearing, she estimated that she could stand for only fifteen to twenty minutes at time, walk only fifty feet, and was not able to do household chores or groceries without assistance. (Tr. at 30-32). However, in her function report, she stated that she could do light dusting and load the dishwasher. (Tr. at 182-183). She also stated in her function report that she goes outside daily, rides in a car, goes shopping, watches television, and spends time with her grandchildren. (Tr. at 183-84). She further stated that her illness, injuries, and conditions do not affect her ability to squat, bend, stand, reach, walk, sit, kneel, or climb stairs. (Tr. at 185). A claimant's daily activities are relevant in the consideration of subjective symptoms. *See* 20 C.F.R. §§ 404.1529 (c)(3), 416.929(c)(3); *Moore v. Barnhart*, 405 F.3d 1208, 1212

(11th Cir. 2005). While participation in daily activities of short duration does not necessarily disqualify a claimant from disability, that does not mean it is improper for the ALJ to consider the daily activities at all. *See Makjut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010).

As described above, the ALJ pointed to three specific instances that were all based in fact, in the record, that he found to be discrediting to her testimony. The regulations provide "[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence. . . ." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). These inconsistencies support the ALJ's decision to discredit Plaintiff's allegations of disabling symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (Commissioner considers claimant's daily activities when evaluating the credibility of subjective complaints of pain).

However, the ALJ did not base his discrediting of Plaintiff's testimony only on her inconsistent statements. The ALJ further based his decision not to lend credit to Plaintiff's testimony on the conservative nature of her treatment. The

regulations permit the ALJ to consider Plaintiff's conservative treatment, which can undermine allegations of disabling pain and other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), , 416.929(c)(3)(v); SSR 96-7p, 1996 WL 374186, at *5 (1996). A claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ." SSR 96-7p, 1996 WL 374186, at *7 (S.S.A.) (1996).

In evaluating whether the type of treatment Plaintiff received matched the disabling pain level of which Plaintiff complained, the ALJ listed numerous findings. First, he noted that neither Dr. Long nor Dr. Dyas ever referred her to pain management therapy or for epidural steroid injections, and that neither recommended surgery for her back. (Tr. at 15). Though Plaintiff alleged at the hearing that her physician advised surgery on her neck and possibly her shoulders, the ALJ found no medical evidence to suggest that any source recommended surgery. (Tr. at 16, 31.) Plaintiff never received treatment in an emergency room or at a hospital for complaints of pain. (Tr. at 16). She never received a prescription for sleeping difficulties and/or fatigue or referral to a special for those issues. (Tr. at 15.)

Finally, as discussed earlier, the record indicates that Plaintiff's treatments were successful in controlling her pain, as shown in her March 2013 treatment

notes which recorded that the plaintiff was doing well, with improved range of motion and handgrip strength. (Tr. at 307). These numerous examples of a thorough analysis by the ALJ of Plaintiff's medical history and treatment provide a substantial factual basis for finding Plaintiff's testimony of disabling pain not credible. Plaintiff's allegation that the ALJ improperly evaluated her credibility lacks merit.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Loveless's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON DECEMBER 7, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704